1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| PAUL L. CEBALLOS, | ) | 1:10-cv-00864 SKO |
| | ) | |
| | ) | **ORDER REGARDING PLAINTIFF'S** |
| Plaintiff, | ) | **SOCIAL SECURITY COMPLAINT** |
| | ) | |
| v. | ) | (Doc. 2) |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## BACKGROUND

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to Titles II and XVI of the Social Security Act. 42 U.S.C. §§ 405(g), 1383(c)(3). The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (Docs. 9, 10. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; *see also* L.R. 301, 305.

**FACTUAL BACKGROUND**

Plaintiff was born in 1967, completed the 11th grade, and previously worked in construction. (Administrative Record ("AR") 178, 202, 204.) Plaintiff filed an application for SSI on October 21, 2004, and an application for DIB on November 4, 2004, alleging disability due to affective (mood) disorder, osteoarthrosis and allied disorders, and disorders of muscle, ligament, and fascia.[2] (AR 16, 70-71, 461, 467).

**A.   Medical Evidence [3]**

Between April 2004 and July 2005, Plaintiff was treated numerous times at Polyclinic Medical Group, Inc. ("Polyclinic"), and was treated primarily for physical impairments such as vertigo, back pain, chest pain, upper respiratory infection, hypertension, and coronary artery disease. (AR 222-38.)  Plaintiff also complained of mental conditions, including anger issues, depression, auditory and visual hallucinations, anxiety, agoraphobia, antisocial behavior, and bipolar disorder. (AR 229, 231, 232, 234-37.) Plaintiff received various medications while being treated at Polyclinic, including Lexapro, Prozac, and Seroquel.[4]  (AR 229, 230-31, 236-37.)

Plaintiff was seen at Kern County Mental Health System of Care ("KCMH") between January and July 2005.  (AR 301-19.)   On February 2, 2005, Kris Ricketts, MS, MFT Intern, assessed Plaintiff, who reported that he had been "'hearing voices' and been experiencing depression, anxiety, and panic when he is in a room 'full of people.'" (AR 310.)  Plaintiff reported "a seizure disorder and chronic use of PCP, marijuana and most recently alcohol.  He has been sober for a few months since his primary doctor began prescribing Seroquel and busp[i]rone for his

---

[2] The record indicates that the SSI application was filed in October 2004 and the DIB application was filed in November 2004; however, the administrative law judge's ("ALJ") decision states that both applications were filed in October 2004.  (AR 16, 70-71, 461, 467.)

[3] Plaintiff's brief discusses only medical evidence relating to the ALJ's purported error in evaluating Plaintiff's mental impairments and does contend that the ALJ erred in his findings regarding Plaintiff's physical limitations.  As such, the Court will only consider the medical evidence related to Plaintiff's mental condition, as Plaintiff has waived any arguments concerning the ALJ's decision as to his physical impairments.  See *Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006) (explaining that arguments not raised before the district court are generally waived).

[4] Lexapro is the brand name for a preparation of escitalopram oxalate and Prozac is the brand name for a preparation of fluoxetine hydrochloride; both are used to treat depression. *Dorland's Illustrated Medical Dictionary* 654, 730, 1047, 1562 (31st ed. 2007) [hereinafter *Dorland's*].  Seroquel is the brand name for a preparation of quetiapine fumarate, used to treat schizophrenia and other psychotic disorders.  *Id*. at 1590, 1723.

symptoms."[5]   (AR 313-14.)   Mr. Ricketts stated that "[i]t is not clear [] which came first, the

psychosis or drug use because [Plaintiff] was also experiencing seizures until. . . 15/16 [years] of age

(according to [Plaintiff])."   (AR 314.)   However, Mr. Ricketts opined that Plaintiff's "primary

motivation" for seeking treatment "at this time appears to be obtaining SSI" and noted that Plaintiff

had "just barely started receiving unemployment benefits."   (AR 314.)   Mr. Ricketts stated that

Plaintiff "would benefit from brief treatment to decrease his depressive [and] anxiety symptoms due

to unemployment and pending possible heart surgery."[6]   (AR 314.)   The assessment indicated that

Plaintiff had a current Global Assessment Functioning ("GAF") score of 51 with a highest GAF of

60.[7]   Progress notes indicate that Plaintiff was seen at KCMH through May 12, 2005, and he was

officially discharged from the program on July 6, 2005, for failing to appear at his counseling

sessions.   (AR 302, 318-19.)

On May 21, 2005, Plaintiff was seen by John K. Zhang, Psy.D. for a psychological

evaluation.   (AR 353-55.)   Dr. Zhang noted that Plaintiff was applying for disability benefits for

alleged psychosis.   (AR 353.)   In reporting on Plaintiff's mental status, Dr. Zhang noted that Plaintiff

"seems to be functioning at slightly below average range with adequate memory and concentration"

and that Plaintiff reported "a history of auditory hallucinations related to his substance abuse" that

were "treated with medication with positive result."   (AR 354-55.)   Dr. Zhang indicated a diagnosis

of polysubstance dependence, reportedly in current remission; psychotic disorder not otherwise

specified ("NOS"); mood disorder NOS, and antisocial personality disorder.   (AR 355.)   Dr. Zhang

opined that "[t]he primary impairment seems to be the claimant's drug-related psychosis and mood

disturbances, along with a history of antisocial personality traits. . . His conditions are expected to

---

[5] Buspirone hydrochloride is used to treat anxiety disorders.  *Dorland's* 269.

[6] On May 6, 2005, Plaintiff informed KCMH that he did not require heart surgery because his heart was not "blocked like they thought" and that he "just need[ed] to watch [his] food and take [his] medication."  (AR 319.)

[7] The GAF scale, also referred to as the Axis V diagnosis, is the consideration of "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders 32-34 (4th ed. Text rev. 2000) [hereinafter "DSM-IV"].  A score between fifty-one and sixty indicates that the patient has either moderate symptoms or moderate difficulty in social, occupational, or school functioning. *Id.* at 34.

improve.  At present, he may have some difficulty maintaining adequate concentration, persistence, and pace."  (AR 355.)

On August 5, 2005, State Agency psychiatrist Luyen T. Luu, M.D. reviewed Plaintiff's records.  (AR 367-80.)  Dr. Luu opined that Plaintiff has mild limitations in activities of daily living and in maintaining concentration, persistence, or pace and moderate limitations in maintaining social functioning.  (AR 377.)

On February 11, 2006, Ina Shalts, M.D. conducted a comprehensive psychiatric evaluation.  (AR 391-95.)  Dr. Shalts noted that Plaintiff's chief complaints were that he could not work due to back pain and that he was "bipolar" and felt "depressed."  (AR 391.)  Plaintiff reported mood changes, a belief that people were talking about him, anger, depression, feeling a need to cry, and frequent sleeping.  (AR 391.)  Plaintiff further indicated that he would hear voices and "sometimes" had suicidal thoughts.  (AR 392.)  Dr. Shalts noted that Plaintiff was currently on the medications Seoquel, Benazepril, Baclofen, Crestor, and Buspirone, and that Plaintiff stated that he could not take care of his two-year-old daughter because the medication made him "too sleepy."[8]  (AR 392.)  Dr. Shalts diagnosed Plaintiff with a mood disorder NOS, ruled out bipolar disorder, and indicated a history of polysubstance abuse for which Plaintiff had reported that he had been clean for three years.  Dr. Shalts assessed a GAF of 50.[9]  Dr. Shalts noted that Plaintiff "stated that his main problem is his pain because he is not able to work."  (AR 394.)  Dr. Shalts opined that Plaintiff was "able to understand, remember, and carry out simple instructions," that "[h]e would have some difficulty working with supervisors and the public," and that "[h]e would have some difficulty with the usual work situation."  (AR 394.)

On April 22, 2006, State Agency psychiatrist J.A. Collado, M.D. reviewed Plaintiff's record and affirmed the findings of Dr. Luu.  (AR 396-400.)  The supporting documentation to Dr. Collado's affirmation indicates that records concerning Plaintiff's mental condition were considered,

---

[8] Benazapril is used to treat hypertension; Baclofen is used to treat "spasticity of cerebral origin, including trauma to the brain or cerebral palsy"; and Crestor is the brand name for the preparation rosuvastatin calcium, used to treat hypercholesterolemia.  *Dorland's* 193, 211, 438, 1680.

[9] A GAF score between forty-one and fifty indicates that the patient has either serious symptoms or serious impairment in social, occupational, or school functioning.  *DSM-IV* 34.

including Dr. Shalt's opinion that Plaintiff would have some difficulty working with supervisors, the public, and in the usual work situation. (AR 403-04.) Dr. Collado found that Plaintiff had sufficient ability to understand and carry out simple instructions, to perform activities with directions, and to maintain attention in two hour increments. (AR 400.) Further, Dr. Collado opined that Plaintiff was able to maintain socially appropriate behavior, to accept instructions and respond appropriately to criticism from supervisors, and to interact appropriately with the general public. (AR 400.) Plaintiff had the "sufficient ability to appropriately respond to changes in work setting." (AR 400.)

On October 17, 2007, Edward Brown, M.D. of Polyclinic jotted a handwritten note on a prescription pad indicating that Plaintiff was "[d]isabled due to schizophrenia [and] bipolar [disorder]." (AR 435.) On October 24, 2007, Dr. Brown performed a mental assessment based on Plaintiff's medical records. Dr. Brown stated that Plaintiff was slightly limited in his ability to understand, remember, and carry out very short and simple instructions, to make simple work related decisions, and to accept instructions and respond appropriately to criticism from supervisors. (AR 438-40.) Dr. Brown found Plaintiff to be moderately limited in his ability to remember locations and work-like procedures, to maintain attention and concentration for extended periods, to work with others without distraction, and to interact appropriately with the general public. (AR 438-40.) Plaintiff was found to have marked limitations in his ability to understand, remember, and carry out detailed instructions, and in his ability to complete a normal work-day and work-week without interruptions from psychologically based symptoms. (AR 438-40.) Dr. Brown's functional capacity assessment indicated that Plaintiff had disorders which included schizophrenia and bipolar. (AR 442.)

**B.    Administrative Hearing**

The Commissioner denied Plaintiff's applications initially and again on reconsideration; consequently, Plaintiff requested a hearing before an ALJ. (AR 462-66, 468-73, 474-76.) On October 31, 2007, ALJ Stephen Webster held a hearing in which Plaintiff and vocational expert ("VE") Kenneth Ferra testified. (AR 43-69.)

### 1.    Plaintiff's Testimony

Plaintiff testified that he was married with two children of his own and four stepchildren; he lived with his wife, three-year-old daughter, and twenty-five year old stepson. (AR 47-48.) Plaintiff stated that he had a driver's license but would only drive "[o]nce in a while" due to his back pain and reaction to his medication; usually his wife would drive him to his doctors' appointments or elsewhere. (AR 47-48.) Plaintiff said that he helped take care of his daughter and he would watch television for approximately six to seven hours a day. (AR48-49.) Plaintiff indicated that he would occasionally visit with friends or family, but that it was difficult due to his "back problem" and that his medication made him "always tired." (AR 49.)

Plaintiff stated that he had an 11th grade education, did not have a GED, and that he had not completed a vocational school for automotive training. (AR 50.) Plaintiff testified that he had been in jail "[o]ff and on" until he "got a little older and just stopped going." (AR 50.) Plaintiff believed that he had been out of jail for approximately three or four years, perhaps longer. (AR 50.) Plaintiff said that he had not worked for pay since October 2004, and that he was receiving welfare and food stamps. (AR 50-51.) Plaintiff indicated that he had a back injury and degenerative disc disease; he also had a problem with depression and stated that the recent death of his parents had him "kind of screwed up in the head a little bit." (AR 51.) As for his psychological treatment, Plaintiff said that he was going to a mental health facility in Bakersfield but that he would "get in these little moods" and refuse to leave his room for three days. (AR 53.) Plaintiff reported that the facility was "going to come and get" him but that it had not yet done so. (AR 53.) The facility had referred Plaintiff to a "schizophrenia class," but he was uncertain about attending. (AR 53.) Plaintiff had not been to the mental health facility for "[p]robably about six months" prior to the hearing with the ALJ. (AR 54.) Plaintiff also testified regarding the pain in his lower back, neck, right arm, and right leg. (AR 54-55.)

### 2.    VE Testimony

The ALJ asked whether there were jobs available for a hypothetical person of Plaintiff's age, education, and work history who could lift 50 pounds on occasion and 25 pounds frequently, who could sit, stand, and walk six out of eight hours, and who would be limited to simple, routine,

repetitive tasks with occasional contact with the public. (AR 64.) The VE testified that there would

be jobs in the regional or national economy such as wall cleaner, window cleaner, and farm worker

which would be compatible with that hypothetical; the positions were medium and unskilled.

(AR 64-65.) The ALJ posed a second hypothetical where the person could lift 20 pounds on

occasion and 10 pounds frequently; the other restrictions remained the same. The VE indicated that

such a person could perform light, unskilled work such as assembler, cleaner, and polisher. (AR

65-66.) In the third hypothetical, the ALJ asked the VE to assume the same factors but that the

person would have to be able to sit or stand at will; the VE indicated that there would be no positions

available if the jobs continued to be restricted to simple, repetitive tasks. (AR 66.)

Plaintiff's counsel posed a hypothetical to the VE in which the person could sit continuously

for two hours, walk and stand for 30 minutes, sit for a total of four hours in an eight-hour day, lift

a maximum of 10 pounds, required frequent changing of positions and lying down periodically, and

had pain restrictions which would restrict the ability to maintain concentration. (AR 66-67.) The

VE testified that there were no jobs for such a person. (AR 67.)

## C.    ALJ's Decision

On February 13, 2008, the ALJ issued a decision finding Plaintiff not disabled since October

29, 2004. (AR 13-26.) Specifically, the ALJ found that (1) Plaintiff met the insured status

requirements of the Act through December 31, 2008; (2) Plaintiff had not engaged in substantial

gainful activity since the alleged onset date of October 29, 2004; (3) Plaintiff had the impairments

of degenerative disc disease, arthritis, and depression that were considered "severe" based on the

requirements in the Code of Federal Regulations; (4) Plaintiff did not have an impairment or

combination of impairments that met or equaled one of the impairments set forth in 20 C.F.R. Part

404, Subpart P, Appendix 1; (5) Plaintiff had the residual functional capacity ("RFC") to perform

light work as defined in 20 C.F.R. § 404.1567(b) but was limited to performing simple routine,

repetitive work and is limited to occasional interaction with the public;[10] (6) Plaintiff could not

---

[10] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. Social Security Ruling 96-8p. The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's

perform any past relevant work; (7) Plaintiff was defined as a younger individual on the alleged disability onset date; (8) Plaintiff had a limited education and was able to communicate in English; (9) the transferability of job skills was not an issue because Plaintiff's past relevant work was unskilled; (10) there were jobs that existed in significant numbers in the national economy which Plaintiff could perform; and (11) Plaintiff had not been under a disability as defined in the Act since October 29, 2004, through the date of the ALJ's decision.  (AR 18-25.)

Plaintiff sought review of this decision before the Appeals Council.  On March 17, 2010, the Appeals Council denied review.  (AR 7-9.)  Therefore, the ALJ's decision became the final decision of the Commissioner.  20 C.F.R. §§ 404.981, 416.1481.

**D.    Plaintiff's Contentions on Appeal**

On May 12, 2010, Plaintiff filed a complaint before this Court seeking review of the ALJ's decision.  Plaintiff contends that the ALJ (1) failed to properly consider the psychiatric medical opinion of Dr. Shalts in determining the RFC; and (2) failed to provide legally sufficient reasons to reject Plaintiff's testimony.

## <u>SCOPE OF REVIEW</u>

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999).  In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner.  *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996).  Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings.  *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

---

RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

1    *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305

2    U.S. 197, 229 (1938)).  The Court "must consider the entire record as a whole, weighing both the

3    evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may

4    not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*,

5    504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

6                                    **APPLICABLE LAW**

7            An individual is considered disabled for purposes of disability benefits if he is unable to

8    engage in any substantial, gainful activity by reason of any medically determinable physical or

9    mental impairment that can be expected to result in death or that has lasted, or can be expected to

10   last, for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A),

11   1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003).  The impairment or

12   impairments must result from anatomical, physiological, or psychological abnormalities that are

13   demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of

14   such severity that the claimant is not only unable to do his previous work, but cannot, considering

15   his age, education, and work experience, engage in any other kind of substantial, gainful work that

16   exists in the national economy.  42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

17           The regulations provide that the ALJ must undertake a specific five-step sequential analysis

18   in the process of evaluating a disability.  In the First Step, the ALJ must determine whether the

19   claimant is currently engaged in substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b).

20   If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment

21   or a combination of impairments significantly limiting him from performing basic work activities.

22   *Id.* §§ 404.1520(c), 416.920(c).  If so, in the Third Step, the ALJ must determine whether the

23   claimant has a severe impairment or combination of impairments that meets or equals the

24   requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1.  *Id.*

25   §§ 404.1520(d), 416.920(d).  If not, in the Fourth Step, the ALJ must determine whether the claimant

26   has sufficient RFC despite the impairment or various limitations to perform his past work.  *Id.*

27   §§ 404.1520(f), 416.920(f).  If not, in the Fifth Step, the burden shifts to the Commissioner to show

28   that the claimant can perform other work that exists in significant numbers in the national economy.

*Id.* §§ 404.1520(g), 416.920(g).  If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps.  *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

## DISCUSSION

### A.    The ALJ's Consideration of Medical Opinions in Determining the RFC

Plaintiff argues that the ALJ's RFC determination in which Plaintiff was limited to light, simple, routine repetitive work with occasional interaction with the public fails to account for the findings of Dr. Shalts and other physicians who indicated greater mental limitations.  Defendant argues that the RFC is not a medical finding but an administrative finding left to the Commissioner based upon an analysis of the record as a whole; as such, the RFC is not required to exactly match the findings of any particular medical source.

#### 1.    Legal Standard

The medical opinions of three types of medical sources are recognized in Social Security cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians)."  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

Generally, a treating physician's opinion should be accorded more weight than opinions of doctors who did not treat the claimant, and an examining physician's opinion is entitled to greater weight than a non-examining physician's opinion.  *Id.*  Where a treating or examining physician's opinion is uncontradicted by another doctor, the Commissioner must provide "clear and convincing" reasons for rejecting the treating physician's ultimate conclusions.  *Id.*  If the treating or examining doctor's medical opinion is contradicted by another doctor, the Commissioner must provide "specific and legitimate" reasons for rejecting that medical opinion, and those reasons must be supported by substantial evidence in the record.  *Id.* at 830-31; *accord Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009).  The ALJ can meet this burden by setting forth a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

However, the ALJ "need not discuss *all* evidence presented" but instead must only "explain why 'significant probative evidence has been rejected.'" *Vincent v. Heckler* 739 F.2d 1393, 1394-95 (9th Cir. 1984) (quoting *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir.1981)).  Further, a medical opinion is considered uncontroverted if all the underlying medical findings are similar.  *See Sprague v. Bowen*, 812 F.2d 1226,1230 (9th Cir. 1987).

**2.      Substantial Medical Evidence Exists to Support the ALJ's RFC Finding**

The ALJ made an RFC determination that Plaintiff had the capacity to perform light work but was "limited to performing simple, routine, repetitive work."  (AR 20.)  The only mental limitation that the ALJ's RFC imposed was that Plaintiff was "limited to occasional interaction with the public."  (AR 20.)

In determining the RFC, the ALJ considered Plaintiff's treatment records relative to his mental impairments and stated that the records documented "a history of complaints of anger issues," "a possible learning disability," "mood and psychotic symptoms due to chronic polysubstance dependence," "adjustment disorder," and "difficulty maintaining adequate concentration, persistence and pace."  (AR 22.)  The ALJ noted that the consultative psychiatric examiner found that Plaintiff "was able to understand, remember, and carry out simple instructions[,] and would have some difficultly working with supervisors and the public [and] with the usual work situation."  (AR 22-23.)  In considering the medical evidence, the ALJ gave "significant weight" to Dr. Shalts' opinion, finding that it was "supported by the clinical data and diagnostic findings gathered during the course of his comprehensive psychiatric evaluation and because Dr. Shalts is Board eligible leaving him well qualified to assess the claimant's functional impairments."  (AR 23.)

On February 21, 2006, Dr. Shalts conducted a comprehensive psychiatric evaluation of Plaintiff.  (AR 391-95.)  Dr. Shalts diagnosed Plaintiff with mood disorder NOS, polysubstance abuse (clean for three years per Plaintiff), history of a learning disability, chronic back pain, socioeconomic problems and ruled out bipolar disorder.  (AR 394.)  Dr. Shalts' functional assessment indicated that Plaintiff was "able to understand, remember, and carry out simple instructions.  He would have some difficulty working with supervisors and the public.  He would

1    have some difficulty with the usual work situation. [Plaintiff] stated that his main problem is his pain

2    because he is not able to work."  (AR 394.)

3          Plaintiff asserts that because the ALJ's RFC only limited Plaintiff's interaction with the

4    public and failed to account for Dr. Shalts' finding of additional difficulty in interacting with

5    supervisors and difficulty with the usual work situation, the ALJ rejected Dr. Shalts' medical opinion

6    and substituted his own lay opinion for that of a medical professional.  Plaintiff further contends that

7    the ALJ failed to properly consider the opinions Dr. Brown and Dr. Zhang who found limitations in

8    social functioning consistent with Dr. Shalts.[11]

9          "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual

10   functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001); *see also* 20 C.F.R.

11   § 416.927(e)(2) (the determination of the RFC is a decision "reserved to the Commissioner").

12   Courts will "affirm the ALJ's determination of [a claimant's] RFC if the ALJ applied the proper

13   legal standard and his decision is supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d

14   1211, 1217 (9th Cir. 2005).  Further, "[i]t is not necessary to agree with everything an expert witness

15   says in order to hold that his testimony contains 'substantial evidence.'"  *Magallanes v. Bowen*,

16   881 F.2d 747, 753 (9th Cir. 1989).  As such, an ALJ need not incorporate all of a physician's

17   findings into the RFC.

18         Here, the ALJ gave "significant weight" to the findings of Dr. Shalts' opinion that Plaintiff

19   might have "some difficulty" working with the public when formulating the RFC to include limits

20   of "occasional interaction with the public."  (AR 20, 23, 394.)  Although the RFC does not include

21   the additional limitation that Plaintiff would have "some difficulty" working with the public and with

22   the usual work situation, there is no requirement that the ALJ's RFC include all of the medical

23   findings.  *See Magallanes*, 881 F.2d 751-53.  Instead, the ALJ can be "aware of the bases" of a

24   physician's finding and not agree with the entire finding, provided that the ALJ's determination is

25   "supported by objective medical evidence."  *Id*. at 753.

26

27   _____

28       [11] Plaintiff's brief makes repeated reference to the ALJ's failure to properly consider the opinion of Dr. Hood (Doc. 28, 7:14-15, 19-20); however, the Administrative Record contains no records from Dr. Hood and it does not appear that Dr. Hood ever treated or examined Plaintiff or reviewed his records.

On May 21, 2005, Dr. Zhang also examined Plaintiff and, like Dr. Shalts, conducted a psychological evaluation. (AR 353-55.) Although Plaintiff argues that Dr. Zhang provides confirmation of Dr. Shalts' finding of further limitations, Dr. Zhang actually opined that Plaintiff's "primary impairment appears [his] drug-related psychosis and mood disturbances, along with a history of antisocial personality traits . . . His conditions are expected to improve. At present, he may have some difficulty maintaining adequate concentration, persistence, and pace." (AR 355.) Reviewing physicians Dr. Luu and Dr. Collado agreed with this assessment and found that Plaintiff would have moderate difficulties in maintaining social functioning and mild difficulties in restrictions of activities of daily living and in maintaining concentration, persistence, or pace; there were also moderate limitations as to Plaintiff's ability to understand, remember, and carry out detailed instructions. (AR 377, 396.) Accordingly, based upon the opinions of Dr. Shalts, Dr. Zhan, Dr. Luu, and Dr. Collado, substantial evidence exists for the ALJ's RFC determination that Plaintiff should be "limited to performing simple routine, repetitive work" and "limited to occasional interaction with the public." (AR 20.)

Plaintiff also argues that Dr. Shalts' findings regarding Plaintiff's limitations in social functioning and work settings were supported by the opinions of Dr. Brown and that the ALJ erred in his assessment by ignoring these limitations. However, the ALJ clearly rejected Dr. Brown's findings:

> The opinion of Edward Brown ,M.D. of the Polyclinic Medical Center expressed on a prescription form dated October 17, 2007[,] merely stating, "Disabled due to schizophrenia & bipolar disorder[,]" is not given controlling weight. . . [T]his doctor provided no medical analysis or good explanation in support of this opinion nor referenced any clinical data, medical signs, or diagnostic findings which form the basis of this opinion. Additionally, there is neither evidence of any longitudinal treatment relationship with the claimant nor any evidence of this doctor's specialization in mental disorders. Dr. Brown's opinion is also inconsistent with the other evidence relative to the claimant's functional limitations resulting from mental impairment. Dr. Brown's opinion expressed in a pre-printed form entitled "Physical Capacities Evaluations" is accorded little weight for the same reasons.

(AR 23.) As such, Plaintiff's argument that Dr. Brown's opinion somehow bolsters Dr. Shalts' finding of additional limitations is not convincing, as Dr. Brown's determination that Plaintiff was disabled "[w]ithout providing any detailed analysis of [Plaintiff's] condition and his diagnosis" is insufficient. *Young v. Heckler*, 803 F.2d 963, 967 (9th Cir. 1986).

1    Accordingly, the Court finds that substantial evidence exists to support the ALJ's RFC

2  finding and that the ALJ did not err as to his silence with regard to additional limitations found by

3  Dr. Shalts.

4  **B.    Plaintiff's Credibility**

5    Plaintiff contends that the ALJ improperly assessed his credibility as to his complaints of

6  subjective symptoms.  The Commissioner, however, argues that the ALJ properly determined that

7  the medical evidence does not support Plaintiff's claim of being totally disabled due to psychological

8  impairments.

9    In considering Plaintiff's credibility, the ALJ found that Plaintiff's "medically determinable

10 impairments could reasonably be expected to cause the alleged symptoms, but that the claimant's

11 statements concerning the intensity, persistence and limiting effects of these symptoms are not

12 credible."  (AR 21.)

13   **1.    Legal Standard**

14   In evaluating the credibility of a claimant's testimony, an ALJ must engage in a two-step

15 analysis.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  First, the ALJ must determine

16 whether the claimant has presented objective medical evidence of an underlying impairment that

17 could reasonably be expected to produce the pain or other symptoms alleged.  *Id.*  The claimant is

18 not required to show that his impairment "could reasonably be expected to cause the severity of the

19 symptom she has alleged; he need only show that it could reasonably have caused some degree of

20 the symptom."  *Id.* (quoting *Lingenfelter*, 504 F.3d at 1036).  If the claimant meets the first test and

21 there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the

22 severity of the symptoms if the ALJ gives "specific, clear and convincing reasons" for the rejection.

23 *Id.*  As the Ninth Circuit has explained:

24       The ALJ may consider many factors in weighing a claimant's credibility, including
         (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for
25       lying, prior inconsistent statements concerning the symptoms, and other testimony
         by the claimant that appears less than candid; (2) unexplained or inadequately
26       explained failure to seek treatment or to follow a prescribed course of treatment; and
         (3) the claimant's daily activities.  If the ALJ's finding is supported by substantial
27       evidence, the court may not engage in second-guessing.

28

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226-27 (9th Cir. 2009); 20 C.F.R. §§ 404.1529, 416.929. Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

### 2.   The ALJ Provided Clear and Convincing Reasons for Rejecting Plaintiff's Subjective Complaints

In this case, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms. (AR 17.) Therefore, absent affirmative evidence of malingering, the ALJ's reasons for rejecting Plaintiff's testimony must be clear and convincing. *Vasquez*, 572 F.3d at 591.

Plaintiff asserts that the ALJ improperly rejected Plaintiff's subjective complaints because the ALJ "faults" Plaintiff "for performing some activities of daily living . . . Specifically, the ALJ states that [Plaintiff's] ability to live with his wife, perform minimal household chores, and go[] to doctors['] appointments is reason to reject the testimony. The ALJ is wrong." (Doc. 17, 11:19-22.) However, this assertion is not an accurate assessment of the ALJ's determination, as the ALJ also found that the objective medical evidence in the record did not fully support Plaintiff's subjective complaints. (AR 17.) Although the inconsistency of objective findings with subjective claims may not be the sole reason for rejecting subjective complaints of pain, *Light*, 119 F.3d at 792, it is one factor which may be considered with others. *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).

The ALJ stated that Plaintiff made several allegations concerning his mental and physical impairments. Plaintiff alleged that "he cannot work because of pain and he is not suppose[d] to over exert himself. . . . He further alleges that he cannot functions because of medications . . ." (AR 21.) As for Plaintiff's physical impairments, the ALJ determined the following:

> Diagnostic findings and clinical data . . . indicate reversible ischemia; mild changes of spondylosis L3-4 and L4-5; neurological evaluation within normal limits; borderline EEG with transient asymmetrical theta; normal CT brain scan; no obstructive arterial disease revealed by angiogram; controlled hypertension; obesity; mild physical therapy examination except for somewhat slow and guarded gait,

reports of mild lower cervical pain at end ranges of motion, pain on full end flexion, pain on recovery to upright position, mild point tenderness at cervicothoracic spine and lower thoracic and lumbar areas; lumbar arthralgias; and a magnetic resonance imaging showing a bulging disc in the lower back. . . . The notes show now localized paravert, muscle spasms, tenderness, crepitus, effusions, deformities, or impingement signs, and his strength, sensation, and DTRs were within normal limits.

(AR 22.)

The ALJ relied upon the findings of "an examining physician [who] determined the claimant was capable of frequently lifting and/or carrying 25 lbs; [and] standing and/or walking six hours per eight hours, without any sitting restriction." (AR 22.) The ALJ further relied on "the consultative examining physician [who] concluded the claimant was capable of heavy exertional work activity without any restriction." (AR 22.) Plaintiff's brief did not raise any arguments opposing the ALJ's findings as to Plaintiff's physical limitations.

As for Plaintiff's mental impairments, the ALJ relied upon the findings of the medical examiner who "opined the claimant may have some difficulty maintaining adequate concentration, persistence and pace." (AR 22.) Further, "substantial weight" was given to the State agency reviewing physicians "indicating the claimant is capable of performing simple repetitive tasks." (AR 23.) As noted above, the ALJ also gave "significant weight" to Dr. Shalts' finding that Plaintiff "was able to understand, remember, and carry out simple instructions[,] and would have some difficulty working with supervisors and the public [and] with the usual work situation." (AR 22-23.) The ALJ thus reviewed the medical records and determined that "[o]bjective medical evidence does not fully support the claimant's complaints." (AR 21.)

The ALJ also indicated that there were "other factors which do not fully support claimant's complaints and render the claimant's assertions only to the extent consistent with the ability to perform work pursuant to the residual functional capacity as described." (AR 23.) The ALJ found that Plaintiff "admitted to a fairly active lifestyle. He reportedly lives with his wife; cares for personal needs; is able to do very light household work; and goes to doctor's appointments." (AR 23.)

The Court agrees with Plaintiff's contention that the fact that Plaintiff is able to live with his wife and attend doctors' appointments is not persuasive in discounting Plaintiff's credibility. The

1    Court recognizes that "disability claimants should not be penalized for attempting to lead normal

2    lives in the face of their limitations" and that "[o]nly if the level of activity were inconsistent with

3    Claimant's claimed limitations would these activities have any bearing on Claimant's credibility."

4    *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).   Nonetheless, Plaintiff also testified that he

5    would assist in taking care of his three-year-old daughter and help out "sometimes" with household

6    chores.  (AR 48-49.)

7         An ALJ can appropriately consider Plaintiff's activities of daily living in determining that

8    he was not entirely credible, but the mere fact of a claimant's carrying on certain daily activities does

9    not necessarily detract from credibility as to overall disability.  *See Orn v. Astrue*, 495 F.3d 625, 639

10   (9th Cir. 2007).   However, a negative inference is permissible where the activities contradict the

11   other testimony of the claimant, or where the activities are of a nature and extent to reflect

12   transferable work skills.  *See Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002)*; Morgan*,

13   169 F.3d at 600.  A claimant's performance of chores such as preparing meals, cleaning house, doing

14   laundry, shopping, occasional childcare, and interacting with others has been considered sufficient

15   to support an adverse credibility finding when performed for a substantial portion of the day.  *See*

16   *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008); *Burch*, 400 F.3d at 680-81;

17   *Thomas*, 278 F.3d at 959; *Morgan*, 169 F.3d at 600; *Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir.

18   1990).  Further, as noted above, the ALJ provided several other reasons for rejecting Plaintiff's claim

19   of disability and did not rely solely on his ability to perform daily activities.  (AR 15-16.)

20        In sum, the ALJ cited clear and convincing reasons for rejecting Plaintiff's subjective

21   complaints regarding the intensity, duration, and limiting effects of his symptoms.  *See Batson v.*

22   *Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196-97 (9th Cir. 2004) (claimant's contradictory

23   testimony unsupported by objective medical evidence constituted substantial evidence in support of

24   ALJ's negative credibility determination).   Moreover, the ALJ's reasons were properly supported

25   by the record and sufficiently specific to allow the Court to conclude that the ALJ rejected Plaintiff's

26   testimony on permissible grounds and did not arbitrarily discredit Plaintiff.  *See Turner v. Comm'r*

27   *of Soc. Sec.*, 613 F.3d 1217, 1224 n.3 (9th Cir. 2010).

28

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, the Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff Paul L. Ceballos.

IT IS SO ORDERED.

**Dated:   August 29, 2011**                         /s/ Sheila K. Oberto
                                              UNITED STATES MAGISTRATE JUDGE